Good morning and may it please the court. In a series of four separate decisions, all involving the sentencing of juveniles, the Supreme Court established the principle that for purposes of sentencing, juveniles are constitutionally different from adults. That principle is rooted in the Eighth Amendment's prohibition against cruel and unusual punishment and disproportionate sentencing. In the last two decisions of those four Supreme Court decisions, Miller v. Alabama and Montgomery v. Louisiana, the Supreme Court established the constitutional rule that in homicide cases involving juvenile defendants, that it is unconstitutional to impose a sentence, a mandatory sentence of life without parole. Let me ask you this. Yes, Your Honor. On a re-sentencing which occurred here, he had already served 19 years, I believe. Yes, Your Honor. Does the judge look at the case as if he were 15 years old as opposed to 34? Well, Your Honor, I think the judge needs to do both. Certainly, at the time that Mr. Friend committed the offenses in this case, he was 15 years old. And the Supreme Court requires that the sentencing court take into account youth and its attendant characteristics when re-sentencing or in sentencing a juvenile defendant. But in this case, we have an actual re-sentencing hearing where at the time that Mr. Friend appeared back in June of last year for his re-sentencing, he was 34 years old. And the court had a breadth of information, almost 20 years, of Mr. Friend and how he performed in incarceration, whether or not he had any significant infractions. Well, my question was, can you tell from this record that he really did consider that he was 15 years old at the time of this re-sentencing? No, Your Honor. You cannot. And in fact, the only time that the district court mentions the word juvenile or any synonym of juvenile is on page 4 of the transcript. And the transcript is 166 pages. And in that mentioning of the buildings of Miller and Montgomery. And no other place in the transcript does the district court mention the word juvenile, child, children, teen, minor. But counsel, isn't it fair based on the context of the re-sentencing, he is only there for re-sentencing because he was a juvenile. Everybody in the room, including every reference that the judge made here, was the reason they were there was because he was a juvenile at the time of the offense. I mean, nobody has to say the magic word, right? Our case law is very clear. The context is sufficient. And everybody in the room was well aware of why they were there. Isn't that fair? That's a fair assessment, Your Honor, that clearly the district court mentions in the beginning that the case is there for re-sentencing because of the holdings in Miller v. Montgomery. But what is absent in the record is any expressed consideration of youth and its attendant characteristics, which is a procedural component of the substantive rule in Miller. Under the Pepper's decision, the district court has the discretion of considering or not considering the post-incarceration conduct, does it not? That's correct, Your Honor. The court does have discretion. I would note that in Montgomery the... So what was wrong if the court wanted to discount that and say that's outweighed simply by the horrendous nature of the conduct, the original conduct? Certainly, Your Honor. While the district court does have discretion to consider post-sentencing rehabilitation or not, I think that the decision in Montgomery and the fact that the court mentions that Mr. Montgomery presented evidence about his post-sentencing rehabilitation, the court specifically said, while we're not making any determination as to the accuracy of that information, that's certainly relevant in terms of re-sentencing a person who was a juvenile at the time of the offense because... Your Honor, my basic argument is one of procedure. Because while it is true that Miller does have a substantive constitutional rule, as Montgomery noted, and I think as this court noted in Malveaux v. Athena, that there is a procedural component. And that procedural component requires the court to affirmatively look at youth and its attendant characteristics. And the reason for that is that simply looking at the 3553A factors is not enough in these cases when you're dealing with juvenile defendants because the 3553A factors embody the penological justifications in which both Miller and Montgomery, say, are diminished when youth is considered. So Montgomery specifically establishes that youth must be considered as a separate sentencing factor. Considering, he says, I've looked at the nature, circumstances, your prior background, I understand you had a tough upbringing. So the district court did take that into account, did it not? The district court, Your Honor, you cannot tell by that statement whether the district court is taking into account the circumstances or the environment that Mr. Friend grew up in or if he's also taking into account just the simple fact by itself that Mr. Friend was 15 years old at the time of the commission of the offenses and what that means in terms of his development just on an organic level of his brain. You cannot tell by that statement that the district court actually considered that. And certainly the record is absent of that, Your Honor. How could he not have considered it when so much of the argument was about Mills v. Alabama and the Miller decision and the Montgomery decision? All of those pertain to juveniles. How could he not have taken youth into account? Well, Your Honor, I think certainly the district court allowed the parties to put on their case. Prior to the sentencing hearing, there were dozens of pages of sentencing pleadings and exhibits and then we had the sentencing hearing and certainly the district judge allowed us to put on our case. But as this court established in United States v. Blue, something more is required than allowing the parties to put on their case in just a typical sentencing. And certainly Mr. Friend's resentencing was not a typical case. But in addition to allowing the parties to put on their evidence, the court also has to make specific findings as to any non-frivolous argument that the parties advance and why the judge is accepting that argument. We also have the notion that you don't have to tick through each of the 35-53 other factors. That is correct. So we also have the notion that sentences below guidelines or within guidelines, which is what you want to say, the explanation can be less elaborate than an awkward departure. That is correct, Your Honor. And that is for typical sentencing. Again, as both Gall and the district court has given some latitude in the extent of the explanation of the sentence. But of course, that is going to depend on the circumstances of the case. And again, as the government even acknowledged in its pleadings, this was not a typical case by any stretch. Let me ask you, you went back and you said that there is a procedural aspect of Miller that is required to consider A. I want to put that to the side. Is there an additional procedural requirement that it consider post-defense conduct? Is this somehow overcome Peppers to suggest to you that the court is required after Montgomery to consider post-defense conduct? Or is that just like Peppers, it may but it need not? Well, Your Honor, I think Peppers is clear that the court has discretion. And I think that the use of the word discretion, the court may consider post-rehabilitation or may not. I think what makes this case different is that in coming back for a resentencing, looking at a juvenile defendant's post-rehabilitation conduct is simply what Miller is about. To show that an individual who is a juvenile at the time of the offense has the capability of changing that isn't necessarily present in adults. So being able to look at a person's Miller is saying that that makes it unconstitutional. But my question is the procedural point. Because we also have this other line of cases that I want you to try to help me understand. The Sucy decision, which is from 2012, this has own remand for resentencing. The court has no obligation to consider new evidence beyond the issues that were relevant on appeal. In other words, what the mandate required. That's A. But nothing about that decision suggests that on resentencing, we have an obligation, the district court has an obligation to consider this post-conviction conduct. Your Honor, I think if you look at Sucy and Pepper, the court does not have an obligation to consider post-rehabilitation conduct. However, when considering youth in its attendant circumstances or attendant characteristics, and deciding whether or not a juvenile is or the crimes committed by the juvenile defendant reflect permanent incorrigibility or transient immaturity of youth, being able to look at the institutional history is something that for the court to consider. But the government here conceded he wasn't incorrigible, right? So like they didn't have to make that decision because the government didn't push that he was incorrigible. He was clearly in the transient box if he would. I would say that based on the sentence, Your Honor. But again, if you look at this court's decision in Malveaux v. Medina, the court was still required to make findings as to one of those two things.  And even in a sentence of a term of years, the district court in this case was required to at least make some findings on the record about transient immaturity of youth. And the record is absolutely that. Even when there was no question about that? I mean, everybody in the room agreed that he was not incorrigible. If he's not incorrigible, there's only one other option, right? I mean, it can't be that you have to go through where everybody agrees one doesn't apply, that the other does. It can't be that formulated. Well, I think that the Constitution requires that. The Constitution requires an affirmative finding on the record. If a juvenile defendant is not permanently incorrigible, such that a sentence of life without parole is appropriate, then there has to be some finding on the record that the juvenile defendant what the crimes of the defendant represented the transient immaturity of youth. Is there another option? I mean, we found that it's not incorrigible. I mean, so you're saying they have to make the finding and it's a finding of only one option? Yes, Your Honor. There needs to be some explicit statement, some addressing or determination or finding by the court. And the purpose of that is so that this court and any other appellate court can look at the decision that was made by the district court and be able to determine that the district court exercised its decision-making authority. Are you going to address the recusal issue? Yes, very briefly, Your Honor. In terms of the recusal issue, I just want to be clear that the law does not require actual partiality. Under Title 28, United States Code, Section 455, what is required is that there is an appearance of partiality. And the purpose of that is to maintain How could there be an appearance when Judge Hudson withdrew from consideration three weeks prior to the sentencing hearing? Well, Your Honor, again, I would refer the court to PepsiCo v. McMillan, which is cited in the briefs. It is a Seventh Circuit decision, but I think it's a decision that is as close to these facts, and they're very unique facts, that I could find. And essentially, in that case, Judge McMillan, who was presiding over an antitrust case Yes, but in McMillan, the judge was seeking employment. This was not the case here. They came to him. And he responded. But in McMillan, the judge was actively seeking employment. The judge was actively seeking employment through a headhunter With law firms. With law firms that were parties. I mean, we were interviewing with the government, and that was a world's worth of difference. than seeking employment with private firms and sitting on a case? Your Honor, not in this case, where one of the parties is a representative of the Department of Justice, and that is who the district court interviewed. But he withdrew from consideration three weeks before the sentencing hearing. Your Honor, that's correct. He did withdraw. But again, if you look at the court's decision in McMillan, the fact that that judge had absolutely Your Honor, I see that my time is up. If I can continue my answer. Thank you, Judge. If you look at McMillan, the fact that the court there held that the judge had absolutely no possibility of being hired by either firm. One, because the firm expressly said they weren't interested in hiring the judge. And the other, because the firm never responded to the headhunter that the judge hired. But the point is that by the time it became clear that Judge McMillan would not work for either one of the firms, the damage had been done, so to speak. So the actions had already occurred with the contacting of these firms. In this case, you have the district judge, whether he personally sought to interview for the FBI director position, or he was asked to come, and he did. He went up to Washington, D.C. on May 13th of 2017, which was a Saturday. So he went up to D.C. at their request to interview for this position. A district judge is a city district judge, and he's interviewing, I think, for a position on the Court of Appeals. That doesn't require, by any stretch of the imagination, that a city district judge would accuse himself from every case in which he governs a party. That's correct, Your Honor. But the facts in this case are still unique. Because of the U.S. attorney for the Eastern District of Virginia at that time, Dana Vente, was actively, he was an acting attorney general before Attorney General Jeff Sessions was appointed. He was acting deputy attorney general before Deputy Attorney General Rosenstein was appointed. And he was also the acting assistant attorney general for the National Security Division. So all of these, the National Security Division, the U.S. Attorney's Office, and the FBI, are all agencies of the Department of Justice. And the U.S. Attorney's Office... But he's out of consideration. And again, Your Honor, if you look at McMillan, it's really about the public perception. If someone were to, a reasonable observer, were to consider all of the facts in this case, with respect to the district judge on a Saturday going up to Washington, D.C., at the request of the highest-ranking members of the Department of Justice, instead of declining, that perception or something that a reasonable observer can take into consideration. Thank you, Your Honor. May it please the Court. I'd like to start with the recusal issue that the counsel was just addressing. And as I understood the defendant's argument in this case, the role of the then U.S. Attorney Dana Bente had a special place in the defendant's argument that there should be a recusal. And in denying the recusal motion, the district judge noted not only that in the three days between him interviewing and him withdrawing, he had withdrawn and was no longer seeking or being considered for the director of FBI, but also the district judge made it plain that the U.S. Attorney at the time, Dana Bente, had no role in the interviewing or decision on this. The Court said, and this is on page 363 of the appendix, that the Court had no discussions with Mr. Bente concerning the FBI directorship and he did not participate in the interview with the Attorney General and the Deputy Attorney General. Now, you can have the defendant's claim morph into a much broader, more categorical rule that says a district judge or federal judge who is under consideration by, say, the president for an appointed position has to recuse from all cases involving the United States Party. That would be a dramatic change in how courts have viewed recusal and would equate a judge moving from the judicial branch in the United States government to another position in the United States government as being like applying for a position in a law firm. And there isn't a case that says that, and I don't think that historical practice supports that. If you look at examples, to take specifically the example of the FBI directorship, you have plenty of examples of judges becoming the FBI director. There's William Webster. Becoming what? I'm sorry. Becoming what? I'm sorry, I still didn't hear. You have plenty of instances of judges what? Becoming the director of the FBI. And so William Webster moved from being an Eighth Circuit judge to FBI director. So you certainly want to avoid the appearance of partiality, but on the other hand, sometimes it can become just irresponsible to over-recuse because you throw work on your colleagues. And you, the judge in this case was so much familiar with the facts of it, and somebody else might have had to start cold. But, at any rate, the potential reach of the principle that's expanded here is quite broad. I think that's right. And if you take it at that broadest level, you know, the parties really haven't offered the court any kind of briefing on that that is really all that helpful. And in thinking further about the issue, there is some precedent from the Supreme Court in Mistretta where judges are serving on the Sentencing Commission, and the court there specifically considered a judge's being potentially influenced by the president's appointment power. And they rejected that. They said, no, that's not really something that's going to impugn the impartiality. Do you agree that this is an objective standard? I do agree it's an objective standard. And so if you look at it from the eyes of a reasonable person who looks at the facts of this case, is that what we're supposed to do? That's correct. And I think particularly on a set of facts where you have this judge is asked to interview, three days later himself withdraws, and that's before any of the sentencing proceedings in this case occur, that that alone is sufficient to say that there's not a recusal problem here. If I can, unless the court has further questions on the recusal, I'd like to turn to what I think is really the main argument the defense is focused on. I'd like to focus on the failure to explain. As I understand, that's really kind of what the defendant has put the most emphasis on, the argument here. And the district court did address each of the points, and I understood the defense to make really three arguments. The first was the argument about Miller, that the special status of juveniles, that's one. The second would be that he committed this offense with his family, and that family is very dysfunctional. The third is his post-sentencing rehabilitation. And if you start with the juvenile status, the sentencing – Let's start with the last one, human reversal. Sure. So for the post-sentencing rehabilitation, at the beginning of the sentencing hearing, the district judge heard argument from the government about – or heard the government discuss Pepper that says you can consider post-sentencing rehabilitation. And then on joint appendix page 450, the court said, I'm going to hear any evidence related to relevant conduct or the defendant's correctional adjustment in the interim. Then the court started hearing that evidence, and one of the defendant's witnesses was Dr. Blair. And the judge interrupted or asked a question of Dr. Blair and said, How do you factor in, in your analysis, the fact that he was in a controlled environment? Doesn't that in some way affect your judgment, your conclusion as to how you would react if you were not in a controlled environment? And that's joint appendix page 503. That question is directed at, okay, you're telling me that this defendant is not as dangerous as you might think, that he has undergone post-sentencing rehabilitation. And the judge is probing that, so the judge is obviously actively considering that question. Then moving on, just – Before you move on, I think this is of particular importance, at least to me. So in your brief, you sort of suggest that Pepper's means, since you're not required to consider it, the fact that he didn't consider it is no harm, no foul. And that seems – you sort of backed away from that here, I think wisely, because Pepper's, even though you're not required to, it doesn't make it frivolous, and therefore it has to be addressed, at least somewhat. I agree that it does have to be addressed, and the judge has to consider it. And it's clear on this record, I think, that the judge did, both by announcing, I'm going to consider evidence, interacting with the witnesses that are addressing that. Are there any other places – so if I look at 450 and 508, are there any other places that – or 503, I apologize. Are there any other places, if I was looking for evidence, not necessarily of an expressed discussion, but evidence to suggest that it was considered by this court that I should be sure to look at? Right. And so at page 599, the district court said right before the defendant's allocution, Mr. Friend, I've heard counsel's arguments. I think that's a general reference there. And then most significantly, the defendant's allocution really concluded with him saying, you know, if I'm ever released, I'd like to dedicate my life to humanitarian work. And the district court responded directly to that and said, you know, your desire for mercy, it does remind me that each of the victims that you so brutally tortured in this case begged for their life and begged for mercy from you, and you gave them none. And that statement was the court's clear expression that it was viewing that post. It's not clear. You can say expression, but I don't think you can say clear expression. Well, I think what the court was doing was saying, I hear you on that. It is outweighed by the gravity of this offense. And the other thing I think that shouldn't be lost here is that the defendant's sentence obviously went down. It was life. It went down to 65 years. At the first sentencing, everyone agrees the murder of Soren Kornforth was not considered as relevant conduct. It was considered to determine that the defendant had sufficient mens rea for the murder cross-reference. At the second sentencing, that murder was taken into account under 3661. And so what you have is a sentencing where at the resentencing you're adding in an additional murder, and this defendant's sentence is going down. And I think it's also significant that you have the judge at the beginning of sentencing, this is going to the Miller point, saying specifically that we're here because of Miller and Montgomery. Then at the very end in a statement of reasons, and that's at Joint Appendix page 712, the court says in light of the Supreme Court's ruling in Miller v. Alabama and Montgomery v. Louisiana, the court hereby resentences the defendant to a term of 780 months imprisonment. That's another reference. During the sentencing, the court says on Joint Appendix page 601 to 602, it says, and based upon the record before him, Judge Payne, life was the appropriate. In the interim sentence, in the interim, the United States Supreme Court and the United States Court of Appeals determine that sentences of life without parole as you received are unconstitutional, and this court is duty-bound to follow the direction of higher courts, and I must do so today. Then when the court later addressed the guideline range, the court said the guideline is for life, but however I think every lawyer in this courtroom understands the constitutionality and legal firmness of that guideline is questionable at this point. Can I go back to the post-defense conduct and ask if this court disagreed with you on whether it was adequately addressed, the post-defense conduct piece only. Has the government argued alternatively that that error is harmless? In a number of cases of procedural sentencing error, the government has argued that that error was harmless. Has the government argued that here? There isn't a harmlessness argument in the brief, but I think the court could say that it is harmless. But I would emphasize that. But you didn't make the argument is what I'm saying. It's not in the brief, but I would emphasize that if this court looked at the Supreme Court's recent opinion and Chavez-Meza decided back in June, that case, although it was dealing with a sentence reduction under 3582C2, it said, look, we're going to treat this as if it were a resentencing, a full de novo resentencing. And the explanation was sufficient, the court said there. And one of the points the court made was that the context matters. And in this case, the context shows that the court did not think that the evidence on post-sentencing rehabilitation was sufficient to produce a sentence lower than 65 years. And so I don't think that's a harmlessness argument. I think that's how you look at resentencings and what the court has to say. And the court doesn't have to mechanically say, I am now considering post-sentencing rehabilitation. It's sufficient for a court to have the argument of post-sentencing rehabilitation put before the court, engage with that, ask questions that are critical of it, tell the defendant and counsel, I've heard your arguments, and when presented with the post-sentencing rehabilitation, say it's outweighed. Well, we're in the record. I know he went through all the 35, 53 factors. But where did he say which factors of view he was considering or how he was applying? I think that what you have is the four references that I've cited to Miller, and then you have the court saying these other factors are more important to me, and yet the sentence going down. And so you've got demonstrated consideration, the sentence did go down, and the only thing that could have explained why the sentence would go down in this case is consideration of the defendant's juvenile status and his post-sentencing rehabilitation. So you think that general references are far enough in a case like this? I do, and I think that the... And you would agree that's all there is in the record, general references. Yes, but I think that those are sufficient in this case, because one of the other things that I would point out here is that the difficulty of the court's decision in weighing here doesn't correspond necessarily to how much more illumination can be provided by further discussion. At the end of the day, the court has got to make a judgment call about balancing this rehabilitation against two murders, a permanent maiming of a third person, and enormous harm to the victims and their family members here. So what you're saying is, in fairness to the court, we need to look at this thing as a whole, and we need to step back and ask what, in its totality, the district court was doing. The district court heard arguments of the party. I don't think he shortchanged them or cut them off. And he heard arguments about the things that have been brought up today, which are post-sentencing, rehabilitation, and youth. And at the end of the day, what he's saying is, yeah, I hear you, but this is outweighed by the gravity of what has happened. And it's that balance, and it's that weight that a district court is entitled to make. And you can't read this explanation with saying, there's this, there's this, there's this, and I understand it, but it's outweighed in the final analysis by the conduct on three different occasions, and the long-lasting damage it inflicted. That's right, and I think you can put it in very concrete terms. Felix Lamb, the son of Samuel Lamb, explained at the resentencing, quote, the impact of this crime was extremely devastating to our family, and it's a nightmare that still affects us to this day. On the other hand, you have the defendant listing courses that he's taken in prison, his prison record, and there is a limit to how much a district judge can put into words exactly how it balances those two, to take out of the record, considerations of the sentencing. I mean, the court can say, Felix Lamb explained in vivid detail how this crime has affected his family. The defendant has said that he has engaged in post-sentencing rehabilitation, and now I'm telling you that is a reduction in sentence from life to 65 years. I just don't know how much more you can expect that actually illuminates here for the court to say. It's not as if he can produce a new work of philosophical treatise on how you balance these very broad sentencing factors. The court has before it everything it needs to evaluate the judgment call here, the evidence of the harm of this crime, which was very serious. I mean, really what you have is you've got two murders in a maiming plus all the effect on the family members, and if you break it down and said 25 years for one murder, 25 for another, and 15 for a maiming, I don't see how anyone could say that 25 years for a murder is somehow a violation of the Constitution, is substantively unreasonable, or that wasn't sufficiently explained on this record. Anything further? If the court doesn't have any other questions, I'd ask that the court affirm the judgment. Your Honor, if I can first start with talking about the post-offense rehabilitation or post-sentencing rehabilitation. While the judge did ask a question of Dr. Blair concerning Mr. Friend's institutional record, there was no other finding by the court concerning whether or not that had any impact on the judge's determination of a 65-year sentence. Here in this case, the court had a unique opportunity to look at an almost 20-year history of someone who went into prison at the age of 16 and how he performed or how he fared while he was incarcerated, and the fact that the district judge did not ask any questions of counsel at all. You were not cut off in your argument in any way? I was not, Your Honor. I was not questioned at all. But you were free to develop all of these points before the district judge? Yes, again, Your Honor, I was allowed to put on the case, but again, looking at United States v. Blue, the court has to make some affirmative finding of why, if a party... Let me ask you this. Yes, Your Honor. In light of the fact that the judge heard everything, just to be thoroughly practical, if we remanded this case with whatever instructions to make a finding or whatever, what practical difference would it possibly make when the judge said, I heard everything, I understand your argument, I understand the argument about upbringing, I understand the post-sentence rehabilitation argument, but I just, in the final analysis, think it's outweighed by the pure gravity of the conduct that occurred. That's essentially what he said below. That's essentially what he would say on remand. So what practical difference would it make? Well, Your Honor, it does make a practical difference to follow the law and to conduct a procedure in which the court affirmatively considers youth and its attendant characteristics, and especially in this case where you have such a long history of someone who's been incarcerated and has demonstrated what Miller and Montgomery stand for, and that is that youth are capable of change. Mr. Friend went into prison when he was 16 years old, and his institutional record is, while it's not perfect, is certainly absent of the types of violent behavior that you would expect someone to... Yes, but that's a controlled environment. The district court was entitled to view that as an environment under which one is subject to a remarkable degree of supervision, which would bear very little resemblance to what life on the outside was like. Well, it's a controlled environment, but it's still a chaotic environment where it's completely normal to have evidences of murder in prison, assaults, other violent behaviors, possession of weapons, and none of that is present in Mr. Friend's institutional record. So for practical purposes, remanding the case back to the district court to make a specific finding about youth and its attendant characteristics and whether or not this offense reflected the transient immaturity of youth is important for purposes of this court and being able to look at what the district court did and whether or not the judge exercised meaningful decision-making. It is important when we are talking about a constitutional rule. Yes, but the constitutional rule of the Supreme Court has never equated a term of years in prison with life in prison. The Supreme Court, Your Honor, has not reached that determination, but as discussed in the briefs, there's certainly an emerging circuit split on that issue, as well as within the states. But in Virginia v. LeBlanc, the Supreme Court said that a geriatric release program was not an unreasonable judgment in terms of Miller and Montgomery. Yes, Your Honor, but again, we have to consider the procedural context of the LeBlanc decision, which was essentially reviewing the Supreme Court of Virginia's determination about that program on collateral review. And the Supreme Court held that in the absence of any direct decision by the United States Supreme Court that the Supreme Court of Virginia's decision about Virginia's geriatric release program was not unreasonable under the circumstances that it's entitled to a certain amount of due deference.  Thank you, Your Honor. Come down, recount, and move into your next place.
judges: J. Harvie Wilkinson III, Henry F. Floyd, Julius N. Richardson